IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EDDIE S. BELL, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 07-0191-CV-W-ODS-P |
| ) | Crim. No. 03-00394-01-CR-W-ODS |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

<u>ORDER AND OPINION DENYING MOTION FOR POSTCONVICTION RELIEF
PURSUANT TO 28 U.S.C. § 2255</u>

Pending is Movant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. The motion is denied.

<u>I. BACKGROUND</u>

Movant was convicted following a jury trial on one count of being a felon in possession of a firearm. Briefly, the evidence at trial established that on September 27, 2003, Rochelle Payne was in a grocery store parking lot and saw Movant sitting alone in an SUV. Payne knew Movant because her best friend was married to Movant's brother, so she walked to the vehicle and began talking to him. After about a minute Movant began convulsing. Payne opened the car door, grabbed a cell phone she saw inside, and called 911. She then went into the grocery store, bought a bag of ice, and (accompanied by the store's security guard) returned to Movant and dumped the ice on him. Payne then called her friend (Movant's sister-in-law); police officers arrived while she was on the phone.

Sergeant Carl Cherry arrived first. He observed Bell in the driver's seat of the SUV, unconscious and holding a can in one hand and a syringe in the other. Medical personnel arrived, followed by Officer Robert Wisdom. Before searching the SUV, the officers learned Bell was a convicted felon. An inventory search of the vehicle revealed

many personal items including clothing.  Officer Wisdom found a loaded semi-automatic pistol wrapped in some clothing on the floor behind the driver's seat.

Movant also testified at trial.  He admitted to being a heroin addict and to using heroin on the day in question, but denied ever seeing, much less touching, the firearm found in his vehicle.  He explained he needed heroin so Payne was taking him to see a dealer she knew.  They met the dealer in the grocery store parking lot; he got in the SUV's back seat and insisted Movant inject some heroin in his presence so he would know Movant was not a law enforcement officer.  Movant injected the heroin and blacked out, remembering nothing until he was revived later by medical personnel.  Tr. at 92-97, 100, 103-04.

As noted earlier, the jury found Movant guilty of the crime charged.  At sentencing, the Court determined Movant's Total Offense Level was 24 and his criminal history category was VI, resulting in a sentencing range of 100 to 120 months.  Movant was sentenced to 100 months imprisonment.

Movant appealed his sentence, arguing his prior conviction for burglary of a commercial building was not a crime of violence and he should be resentenced in light of *United States v. Booker*, 543 U.S. 220 (2005).  Both arguments were rejected by the Court of Appeals.  United States v. Bell, 445 F.3d 1086 (8th Cir. 2006).

## II.  DISCUSSION

Movant raises (or at least implies) eleven arguments.  The first five arguments assert ineffective assistance of counsel, and the last six purportedly assert various errors committed during trial or at sentencing.  The arguments will be discussed separately within these two broad categories.

### A.  Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  "This standard requires [Movant] to

2

show that [his] 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced [his] defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)).  This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id.  Failure to satisfy both prongs is fatal to the claim.  Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness").

### 1.  Impeachment of Rochelle Payne

Movant contends he and trial counsel had extensive discussions about the planned cross-examination of Rochelle Payne.  The plan (according to Movant) was to establish (1) she was lying about being at the grocery store and seeing Movant by happenstance, (2) she was present during the drug transaction as described by Movant in his testimony, and (3) she was a drug user and had arranged Movant's meeting with her drug dealer.  Movant concedes this tact would not have established his innocence, but it would have destroyed Payne's credibility.  Cross-examination is fraught with strategic decisions and counsel is generally afforded wide latitude in determining the appropriate tact to take.  Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997).  "In hindsight, there are a few, if any, cross-examinations that could not be improved upon. If that were the standard of constitutional effectiveness, few would be the counsel

3

whose performance would past muster." Willis v. United States, 87 F.3d 1004, 1006 (8th Cir. 1996). The Court has reviewed the trial transcript, and based on the questions actually asked on cross-examination and the nature and import of Payne's testimony, the Court concludes the performance prong was not violated.

Even if the performance prong was violated, Movant cannot satisfy the prejudice prong. Payne's testimony did not connect Movant to the firearm, or inculpate him in any way. Impeaching her testimony would not have led the jury to a different conclusion in this case.

### 2. Failure to Elicit Testimony From Herman and Patricia Bell

Herman Bell is Movant's brother, and Patricia is Herman's wife and Payne's aforementioned friend. He contends Herman would have testified he called Payne and asked her to take Movant to her drug dealer. No specific testimony is ascribed to Patricia.

Movant's claim fails because he offers no basis for believing Herman would have offered this testimony. No affidavit, statement, or other indication that Herman (1) could have and (2) was willing to testify in this manner is contained in the record. Absent this showing, there is no basis for concluding the performance prong was violated.

The prejudice prong has also not been satisfied. The jury heard from Movant's testimony that a drug dealer was in the back seat of the SUV, and neither Herman's testimony nor (if true) Payne's presence in the SUV would have demonstrated the drug dealer left the gun hidden in Movant's clothes.[1] In fact, Movant's testimony that a drug dealer was in the car is uncontradicted; Payne testified she saw Movant, immediately

---

[1]In his Traverse, Movant contends the issue is one of failure to investigate, not merely failure to call witnesses. Movant's explanation is rather lengthy, and fails for the simple fact that Movant does not contend trial counsel failed to learn what Herman could have said at trial. In any event, the prejudice from the failure to investigate depends upon what an investigation would have revealed, and Movant has neither (1) substantiated what his brother would have said at trial or (2) demonstrated the absence of this testimony prejudiced his defense.

4

walked over and tried speaking to him for a minute.  This testimony does not contradict Movant's testimony that he met a drug dealer in the parking lot.

### 3.  Failure to Introduce Cellular Phone Records

Movant has supplied cell phone records from what the Court believes is supposed to be his phone – allegedly, the same cell phone Payne used to call 911.  According to Movant, these records show Payne used his phone to call Herman at 1:39, and 911 was not called until 2:43.  Movant contends this would have impeached Payne's testimony and suggested to the jury that he was passed out for almost an hour before the call to 911 was made.

The value of this evidence is strained at best.  The records definitely show a call made to 911 at 2:43.  Even if the number Movant identifies as Herman's is, in fact, Herman's, there is no way to substantiate *who* made the call to Herman on Movant's phone at 1:39.  Thus, the impeachment value of the records is minimal at best.  Moreover, even if the records could be used to demonstrate Movant was in his truck passed out for a period of time during which a stranger could have wrapped the gun in his clothes on the back floor of his vehicle, this concept was established through Movant's testimony.  There is no likelihood the jury's verdict would have been different, so the absence of the cell phone records did not violate Strickland's prejudice prong.

### 4.  Failure to Object to Allen Instructions and the Court's Response to the Jury's Second Note

Instruction Number 20 told the jury of its duty to deliberate.  Often referred to as an Allen charge or "the hammer,"[2] the instruction was modeled on Instruction 10.02 of the Eighth Circuit Model Instructions.  As the Committee Comments indicate, the Court of Appeals prefers this "instruction be given as part of the regular final instructions,

---

[2] The instruction is named after the Supreme Court's decision in Allen v. United States, 164 U.S. 492 (1896).

5

before the jurors begin their deliberations. If that has been done, and if the circumstances are appropriate, either the same instruction may be repeated later or this instruction 10.02 may be given if the jury announces difficulty in reaching a verdict." Consistent with this advice and the legal authorities cited in support, the Court read Instruction No. 20 to the jury before it began deliberating.

The jury retired at 2:30 p.m. on April 28, 2004, to begin its deliberations. Tr. at 107. The jury left for the day at 5:00 p.m. and reconvened at 8:30 the next morning. At 9:30 the Court received a note from the jury indicating the jury was unable to reach a verdict. R. at 112. The Court responded in writing, telling the jury to "Please carefully re-read Instruction No. 20 and resume your deliberations." Tr. at 113, Court Exhibit 2. The jury returned its verdict at 11:55. Tr. at 113.

Although Movant faults his attorney for failing to object to both Instruction No. 20 and the Court's response to the jury's note, his discussion focuses exclusively on the latter issue. Disposing of the former issue is therefore quite easy: in the absence of argument, counsel was not ineffective in failing to object to Instruction No. 20.

As for the Court's response to the jury's note: Movant speculates that if his attorney had objected the Court's response would have been different, and perhaps a mistrial would have resulted. First, the Court's response was not only very neutral and noncoercive, but was the very sort of response contemplated by the Committee Comments when it advised the Allen charge be read before deliberations commence. Having taken the first step of the Committee's advice, it is hard to comprehend any objection that would have persuaded the Court not to take the second step. Moreover, Movant does not suggest what objection could have been made. Counsel's failure to object did not fail below an objective standard of reasonableness, and there was no prejudice to Movant.

### 5. Failure to Interview Security Guard

Although not explicitly set forth as a separate ground, on several occasions Movant intimates counsel should have interviewed the security guard. Movant's failure

6

what testimony the security guard could have offered is fatal to the claim. Assuming counsel did not speak with the security guard (an issue the Court does not decide), the record establishes the security guard had no knowledge of any events that occurred before Payne came into the store to get some ice and the events that occurred after that time are not in dispute. The events that occurred thereafter are not in dispute, so there is no basis for concluding Movant was prejudiced.

## B. Trial and Sentencing Errors

Movant raises five claims of error that were either determined on direct appeal, or could have been but were not raised on direct appeal. Movant may not use habeas review to revisit claims that were, or should have been, raised on direct appeal.

"A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). Movant first contends he is actually innocent of the crime, but this is a very high standard that requires "new reliable evidence" that will demonstrate it is more likely than not that *no* reasonable jury would have convicted him in light of the new evidence. Wadlington v. United States, 428 F.3d 779, 783 (8th Cir. 2005). Movant has not presented new evidence other than the cell phone records, and this evidence is insufficient to satisfy the high burden necessary to open the gateway to consideration of defaulted claims.

Movant has also contended cause and prejudice exists with respect to certain claims due to ineffective assistance of counsel. The test for ineffective assistance in this context is the same as that utilized when ineffective assistance is offered as a ground for relief. Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005). Though not labeled as such, Movant's arguments are best understood as alleging his counsel was ineffective for failing to raise the specified arguments, and should be analyzed under Strickland.

7

Finally, some of these issues were raised on direct appeal.  A motion under section 2255 is not a vehicle that permits reconsideration of issues previously decided on direct appeal.  English v. United States, 998 F.2d 609, 612-13 (8th Cir.), cert. denied, 510 U.S. 1001 (1993).

### 1. Use of the Allen Instruction and the Court's Response to the Jury's Second Note

In an argument similar to the one presented in Part II.A(4) above, Movant contends the Court erred in reading the Allen Instruction to the jury and in referring the jury to it in response to its second note.  The Court's previous discussion is equally applicable in this context.  Counsel was not ineffective for failing to object to the instruction because it was a correct statement of law and was initially delivered to the jury at the time expressly preferred by the Court of Appeals.  Counsel also was not ineffective for failing to object to the Court's response to the jury's note.  Therefore, cause and prejudice does not exist and the substantive claim was defaulted.  Finally, even if the merits of the claim could be reached Movant would not be entitled to relief.  No legal error was committed, so counsel was not ineffective for failing to object.

### 2.  Addition of a Four Level Enhancement for Possession of a Firearm During the Commission of a Felony

At sentencing, Movant's Total Offense Level was increased four levels pursuant to section 2K2.1(b)(5) of the Sentencing Guidelines, which applies if the defendant used or possessed the firearm "in connection with another felony offense."  Judicial interpretation dictates the necessary connection exists unless it is "clearly improbable" that the firearm had a connection to the other felony.  E.g., United States v. Linson, 276 F.3d 1017, 1018 (8th Cir. 2002).  Movant argues his attorney was ineffective for failing to contest the matter, but devotes little attention to explaining why the increase was inapplicable.  He declares the firearm was at most an accident or coincidence and could not have facilitated the offense of possessing heroin but does not explain these conclusions or otherwise demonstrate the connection between the crime and the

8

firearm was "clearly improbable."  To the contrary, it is not clearly improbable that a person would possess a firearm for protection when purchasing heroin, particularly when purchasing heroin from a dealer one was not familiar with.  There was no error, and counsel's performance did not prejudice Movant.

### 3.  The Four Level Enhancement for Possession of a Firearm During the Commission of a Felony Was Not Submitted to the Jury for a Factual Determination

Movant relies upon *Booker v. United States* to contend the Court erred in failing to ask the jury to decide whether the firearm was used or possessed in connection with another felony.  The Government contends this issue was raised on appeal, but the *Booker* argument raised on direct appeal was not the same as this argument.  See Bell, 445 F.3d at 1091 (Movant argued the case should be remanded so Court could exercise discretion under *Booker* to sentence below the guideline range).  Nonetheless, Movant is not entitled to relief because he misinterprets *Booker*, which specifically held it was improper to ask the jury to decide matters relating to application fo the Sentencing Guidelines.  The sole remedy granted by *Booker* was to make the Sentencing Guidelines advisory instead of mandatory; post-*Booker*, issues relating to application of section 2K2.1(b)(5) are not submitted for a jury's consideration

### 4.  A Second Degree Burglary Conviction is Not a Violent Felony

Movant's Base Offense Level was determined to be 20 based on section 2K2.1(a)(4)(A) of the Sentencing Guidelines, which applies if the defendant was previously convicted of a "crime of violence."  Based on Eighth Circuit precedent, the Court determined Movant's prior conviction for burglary of a commercial dwelling was a "crime of violence."  Movant appealed this determination, but his arguments were rejected.  Movant cannot use this postconviction proceeding to re-assert the same arguments he presented (and lost) on direct appeal.

9

Case 4:07-cv-00191-ODS   Document 12   Filed 08/17/07   Page 9 of 11

## 5. The Phrase "Burglary of a Dwelling" as Used in the Federal Sentencing Guidelines is Unconstitutionally Vague

The phrase "crime of violence" is defined in section 4B1.2 of the Sentencing Guidelines to include any felony that "is burglary of a dwelling . . . .or otherwise involves conduct that presents a serious potential risk of physical injury to another." Movant contends the interpretation of "burglary of a dwelling" as including burglary of commercial buildings was so unexpected that it is unconstitutional, and if this is what it means then the phrase is vague. This argument was not raised on direct appeal, so Movant contends his attorney was ineffective for not raising it.

Both the performance and prejudice prongs suffer from the lack of legal support for Movant's constitutional argument. Movant essentially argues he did not understand burglary of a commercial building to qualify as burglary of a dwelling so the phrase must be vague. This hardly qualifies as compelling legal support. Moreover, his position does not accurately describe the Eighth Circuit's position: the Court of Appeals did *not* hold burglary of a dwelling includes burglary of a commercial building; it held a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another" includes burglary of a commercial building. See United States v. Hascall, 76 F.3d 902, 904-05 (8th Cir.), cert. denied, 519 U.S. 948 (1996). Movant was not prejudiced by counsel's failure to present the constitutional argument he has alleged here.

## 6. The Government's Closing Argument Was Improper

Movant contends the Government's closing argument was improper because the AUSA vouched for Payne's credibility and declared Movant was guilty of the crime charged. This issue was not raised on direct appeal, but Movant alleges his counsel was ineffective for failing to object.

The failure to object did not prejudice Movant because there was nothing improper about the closing arguments. Prosecutors cannot vouch for the credibility of witnesses, but they may make arguments about witness' credibility based on the

10

evidence presented during trial.  United States v. Littrell, 439 F.3d 875, 882-83 (8th Cir. 2006).  Similarly, the prosecutor is entitled to argue the evidence supports certain conclusions about the case – after all, that is one of the purposes for closing argument.  There being nothing improper about the argument, Movant's argument fails.

### III.  CONCLUSION

For the foregoing reasons, Movant's application for relief pursuant to 28 U.S.C. § 2255 is denied.
IT IS SO ORDERED.

DATE: August 17, 2007

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT